# WALTON v. TIMS, BIGELOW AND CALDWELL.

1. When a father directs the proceeds of certain bales of cotton to be applied by his factor in payment of a specific debt of his son, he is warranted in countermanding the direction, at any time before the factor has thus appropriated the money, or entered into an engagement with the creditor, who is the object of the remittance, to hold it for his use.

Writ of error to the Court of Chancery for the first district of the Southern Division.

THIS bill is filed by Walton, alledging that a sum of money is due by him, as the proceeds of certain cotton, to one of the defendants, but that each of them claim it, and will sue for it, unless prevented by the interposition of Chancery. He sets out the manner by which the money came to his hands, the claim asserted to it by the defendants, and concludes with a prayer that they may interplead.

Tims and Bigelow answer the bill, each asserting his claim to the money, and it was taken as confessed against Caldwell. The facts, as gathered from the allegations of the bill, admissions in the answers, exhibits and proofs, are these :

Alexander Tims, a son of the defendant, Amos Tims, was in partnership with Caldwell, and they were indebted to Bigelow in the sum of $900 50, by note, in which Tims appeared as the maker, and Caldwell as indorser. This note was due 1st February, 1839. On the 8th of December of the preceding year, Caldwell wrote to Amos Tims, apparently in answer to a letter requesting information as to his son's affairs, as connected with the business in which he and Caldwell were engaged, " our note, favour of W. S. Bigelow, amount $900 50, will be payable the 1st February next, and I regret to add, that I am much perplexed as to how the means for its payment are to be obtained. All the assistance you can possibly afford me at this critical period, will be most thankfully received. I have several letters from your son. He says money is very scarce there, in Texas. He expresses great solicitude concerning the Bigelow note, and observes that our credit both in Texana, and Matagorda, is very fair, and should the note in question be dishonored, the consequence there would be ruinous. From the excited hopes with which your letters have filled me, I will endeavor to allay his feelings on this head."

In answer to this, the elder Tims wrote, on the 19th December, " You say his note is due on the 1st of February. I am doubtful I will not be able to pay the whole amount, but I wish to send you a few bales of cotton to sell for his benefit, say thirteen or fifteen bales, which I think I can spare. Please say to whom I shall ship it, and when, as I have it now packed. I hope you will see to the sale of it, as I wish to get the highest price, to help my son out of the scrape, for I had rather live on bread and water, than he should sink or fail."

Caldwell had left Mobile for Texas before this was received, and the complainant wrote the elder Tims, under date of 26th December, to this effect : " In a few days after he wrote you, Mr. Caldwell left this place for Matagorda. He constituted me attorney and agent, to act for him in his absence. I heard him often speak of the note he and your son gave to Mr. Bigelow. He has left in my hands some accounts to collect, which I am sorry to say I cannot get paid. Should you be disposed to send me any cotton, your instructions shall be obeyed, in selling the cotton for the best price, and the money appropriated by paying Bigelow, or sending to you, as you may direct."

On the 5th January, Mr. Tims writes to the complainant : " I intended to ship the fourteen bales to Mr. Caldwell. I am glad to hear you are his agent. I will ship it in two or three days, to you, as a present to my son, and hope you will get a good price ; you can judge the quality and will know what it will sell for, and pay over the proceeds for my son and Caldwell. You will please let me know the net amount, for I shall wish to know how near it will pay Mr. Bigelow off. I have raised my son without a mother, and I had rather live on bread and water, than live to see his credit sink or go down."

A witness on behalf of Bigelow, proved, that after the sale of the cotton by the complainant, the elder Tims had said that the proceeds were to go to the payment of the note of Bigelow ; that he had given the cotton for that purpose, and had instructed complainant, as his factor, and as the agent of Caldwell, so to apply the proceeds ; and the witness supposed, that the elder Tims, thought that the note had been taken, and the proceeds so applied, long after the maturity of the note. He was willing that it should be so applied, but the complainant was unwilling to pay it, because Caldwell had given him notice not to do so. The younger Tims died in Texas, about the time the cotton was sold.

The Chancellor considered the gift as complete, by the delivery of the cotton to the complainant, with the instructions to apply the proceeds to the object contemplated, and that it thereby became irrevocable. He accordingly decreed that Walton should pay over the money to Bigelow, and that Tims should pay the costs. This decree is now assigned as error.

Walton v. Tims, Bigelow and Caldwell.

B. F. PORTER, with whom was PHILLIPS, for the plaintiff in error. CAMPBELL, contra.

GOLDTHWAITE, J.—We think it very clear that this decree cannot be sustained. The elder Tims, actuated by most praiseworthy motives, intended to aid his son by a gift of the proceeds of the cotton remitted to the complainant, but Bigelow had no title, either in the cotton or its proceeds, until the factor had consented to hold the money for him. Until an actual payment or appropriation by the factor, the right of Tims to revoke or change his intention, remained unimpaired. The rule, in substance, is thus stated by Lord Ellenborough, in Williams v. Everett, 14 East, 582. It is entire to the remitter to give and countermand his own directions respecting the remittance, as often as he pleases; and the person to whom the remittance is made, may hold it for the use of the remitter himself, until, by some engagement entered into with the person who is the object of the remittance, the factor has precluded himself from so doing, and has thus appropriated the remittance, to the use of such person. After such a circumstance, he cannot retract the consent he once has given, but is bound to hold it for the use of the appointee. To the same effect is Scott v. Procter, 3 Merivale, 652.

In this case, Walton has never consented to hold the proceeds in his hands to Bigelow's use, therefore, it remained to all intents and purposes, the money of the remitter. His willingness that the money should be applied, after he was informed of the sale, did not change the property, or take away his right to revoke the intention to give the money.

Having revoked that intention, and notified Walton not to pay the money as first directed, he is the only person entitled to receive it.

The decree is therefore reversed, and here rendered, directing Walton, to pay over the money in his hands to the defendant, Tims, with interest if it remains in his hands, and if it remains in Court, the register to be directed by the decree, to pay it over as before indicated. If the money remains in Walton's hands, and is not paid over with interest, in ten days after demand, by Tims, then execution to issue. Each of the parties to pay their own costs.